```
UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------------------------------- X
                                                                  :
TIC PARK CENTRE 9, LLC,                                           :   16-CV-4302 (ARR)(JO)
                                                                  :
            Plaintiff,                                            :   NOT FOR ELECTRONIC
                                                                  :   OR PRINT PUBLICATION
    -against-                                                     :
                                                                  :   OPINION & ORDER
MARK JOSEPH WOJNAR; PATRICIA A. WOJNAR;                           :
MICHAEL MANUEL CABOT; CATHERINE CABOT;                            :
JASON M. KRAUS; JEFFREY K. MILLER; MARINER                        :
PROPERTY MANAGEMENT SERVICES, LLC; WTK                            :
REALTY, LLC; PARK CENTRE MED-SUITES, LLC;                         X
GARDENS MED-SUITES, LLC; MEDICAL PRACTICE
OPERATIONS, INC.; ABC CORPORATION; XYZ
LIMITED LIABILITY COMPANY; JOHN DOE; AND
MARY ROE,

            Defendants.
-----------------------------------------------------------------
```

ROSS, United States District Judge:

Plaintiff TIC Park Centre 9, LLC, alleges that defendants defrauded plaintiff of its investment in the Mariner Park Centre, located in Miami, Florida, (the "Property"). Before the court are the following motions: (1) Motion to Dismiss and Compel Arbitration by pro-se defendant Mark Wojnar ("Wojnar"), ECF #8, joined by pro-se defendant Jeffrey K. Miller ("Miller"), see ECF #13;[1] (2) Wojnar's Motion for Extension of Time, ECF #27; and (3) Motion to Dismiss for Improper Venue or, Alternatively, Motion to Transfer, by defendants Michael Manuel Cabot ("Cabot"), Catherine Cabot, Mariner Property Management Services, LLC, (the

---

[1] Defendants Park Centre Med-Suites, LLC, Gardens Med-Suites, LLC, and Medical Practice Operations, Inc., also attempted to join this motion through a pro se filing. See ECF #13. However, "a limited liability company . . . may appear in federal court only through a licensed attorney." Lattanzio v. COMTA, 481 F.3d 137, 140 (2d Cir. 2007). Therefore, these defendants are not addressed in this opinion and order.

"Property Manager"), and WTK Realty, LLC, ECF #10, joined by pro-se defendant Jason Kraus, see ECF #12. (Cabot, Catherine Cabot, the Property Manager, WTK Realty, LLC, and Jason Kraus are hereinafter the "Cabot Defendants.")

For the reasons that follow, I grant Wojnar and Miller's motion to compel arbitration, and stay proceedings with respect to these defendants pending arbitration; and I grant the Cabot Defendants' motion to transfer to the Southern District of Florida, and deny as moot these defendants' motion to dismiss for improper venue. I also deny without prejudice the Cabot Defendants' request for attorneys' fees and costs and deny as moot Wojnar's motion for extension of time.

## BACKGROUND

The following facts are alleged in the Complaint, ECF #1, and taken as true for the purposes of these motions. In 2006 and 2007, defendants Wojnar and Cabot marketed tenant-in-common ("TIC") interests in the Property to private investors. Compl. ¶¶ 32, 34. Approximately thirty investors, including plaintiff, purchased these interests. Id. ¶ 34, 49. Wojnar and Cabot retained a one percent TIC share in the Property through an entity, Mariner Park Centre H, LLC ("Mariner H"). Id. ¶ 37. Wojnar and Cabot are "the owners and alter egos" of various entities at issue here, including Mariner H and the Property Manager. Id. ¶ 11.

### A. The Agreements

Upon purchasing a TIC interest, all TIC Owners, including Mariner H, signed the Tenants in Common Agreement, ECF #8-1 (the "TIC Agreement"). Compl. ¶¶ 41. The most relevant provisions to this dispute are excerpted below:

> 2.1 <u>Management Agreement.</u> Concurrently with the acquisition of the Project, the Tenants in Common will enter into a Property and Asset Management Agreement (the 'Management Agreement') with Mariner Property Management Services, LLC, a Delaware limited liability company ('Property Manager'). . . .

> 5.1 <u>Negotiation and Terms.</u>  In accordance with the Management Agreement, the Property Manager shall be entitled to seek and negotiate terms of (a) permanent and other financing for the Project, including Loans, (b) the sale or exchange of the Project (or portions thereof) to third-party purchasers (a "Sale") and (c) any lease or re-lease of all or any portion of the Project.  All of the items described in (a), (b) and (c) shall require the unanimous approval of the Tenants in Common, which approval shall be as set forth in Section 2.2.1.  Any such written request from the Property Manager for such approval shall be accomplished by a copy of a bona fide offer to purchase in the case of a proposed Sale, a loan commitment letter in the case of a proposed mortgage or a summary of all of the material terms of any proposed lease.
>
> 10.3 <u>Entire Agreement</u>.  This Agreement, together with the Management Agreement, constitutes the entire agreement between the parties hereto pertaining to the subject matter hereof and all prior and contemporaneous agreements, representations, negotiations and understandings of the parties hereto, oral or written, are hereby superseded and merged herein.
>
> 10.5 <u>Venue</u>.  Any action relating to or arising out of this Agreement shall be brought only in a court of competent jurisdiction located in Palm Beach County, Florida.
>
> 10.6 <u>Binding Arbitration</u>.  Any controversy between the parties hereto arising out of or related to this Agreement or the breach thereof or an investment in the tenant in common interests in the Project shall be settled by arbitration in Palm Beach County, Florida, in accordance with the rules of the American Arbitration Association, and judgment entered upon the reward rendered may be enforced by appropriate judicial action. . . .
>
> 10.17 <u>Third Party Beneficiary</u>.  The Tenants in Common each agree that Mariner Asset Management, LLC, and its affiliates and assigns shall be third party beneficiaries of this Agreement.

In addition, Sections 2.2 and 2.3 detail procedures for the TIC owners to consent to various types of actions.

The Property Asset Management Agreement, Decl. of Edward P. Sheu, Exh. 1, ECF #23 (the "PAMA") was originally signed by Mariner Park Centre S, LLC, Mariner H, and the Property Manager.  It was subsequently signed by all TIC owners.  Compl. ¶¶ 41-42.  The most relevant provisions to this dispute are excerpted below:

3

> 1.2.1 <u>Consent of the Tenants in Common</u>. The consent of the Tenants in Common shall be as set forth in Sections 2.2 and 2.3 of the Tenants in Common Agreement.
>
> 2.6.2 The Property Manager shall use commercially reasonable efforts to obtain tenants for all leasable space in the Project and to renew leases and rental agreements (collectively, "Leases") as provided herein. The Property Manager shall have the authority to negotiate new and renewal Leases on behalf of the Tenants in Common and to execute and deliver on behalf of the Tenants in Common any Leases that are approved by the Tenants in Common pursuant to Section 2.2 of the Tenants in Common Agreement. In connection with its leasing efforts, the Property Manager may advertise the Project for lease.
>
> 2.6.3 The Property Manager shall not, without the prior written approval of the Tenants in Common, give free rental or discounts or rental concessions to any employees, officers or shareholders of the Property Manager or anyone related to such employees, officers, or shareholders unless such discounts or concessions are in lieu of salaries or other benefits to which they would be contractually entitled. The Property Manager shall not lease any space in the Project itself or to any of its affiliates or subsidiaries.
>
> 2.7 <u>Collection of Rents and Other Income</u>. Unless otherwise required by any Loan Documents affecting the Project, the Property Manager shall bill all tenants and shall use its commercially reasonable efforts to collect all rents and other charges due and payable from any tenants and or from others for services provided in connection with the Project. The Property Manager shall deposit all monies so collected in the Operating Account (as defined in Section 6.1). The Property Manager shall allocate all income, revenue and expenses from the Project to the Tenants in Common as set forth in the Tenants in Common Agreement.
>
> 10.1 <u>Termination by the Tenants in Common.</u> This Agreement shall terminate on December 31, 2050; provided, however, that this Agreement shall terminate on December 31, 2006 and each anniversary of such date unless all of the Tenants in Common consent to the extension of this Agreement pursuant to Section 1.2.1.
>
> 13.6 <u>Venue.</u> Any action relating to or arising out of this Agreement shall be brought only in a court of competent jurisdiction located in Miami, Florida.

The PAMA does not include an arbitration clause.

**B. Defendants' Alleged Scheme**

Plaintiff alleges that defendants defrauded plaintiffs by pocketing monies paid by the TIC owners for construction projects, the Property's mortgage loan, and other expenses. <u>Id.</u> ¶¶ 53,

4

71-74. Wojnar and Cabot also paid around $160,000 in brokerage commissions from the Property's income to defendant WTK Realty, LLC, controlled by their wives, defendants Patricia A. Wojnar and Catherine Cabot, in violation of the TIC Agreement and PAMA. Id. ¶¶ 121-214.

Defendants further defrauded plaintiff by signing leases with affiliates at less than market value, allowing the affiliates to sublease the Property at market value, and pocketing the difference. For example, in October 2010, Wojnar and Cabot mailed the TIC owners a "term sheet" for a ten-year lease of part of the property to defendant Park Centre Med Suites LLC ("Park Centre"), for approximately $10,000 per month. Id. ¶ 84. Unknown to plaintiff, and in violation of the PAMA, Park Centre was owned by defendant Miller, an associate of Wojnar's. Id. ¶¶ 20-22, 89, 102. Also unknown to plaintiff, and in violation of the TIC Agreement and the PAMA, Wojnar had already signed this lease on July 15, 2010, and on the same day Park Centre signed a sublease with a tenant who would pay $17,625 per month. Id. ¶¶ 85, 88, 90, 102, 104. Miller, Wojnar and Cabot pocketed the difference. Id. ¶¶ 85, 107. Defendants duplicated this scheme with another part of the Property in 2010. Id. ¶¶ 110-120.

On October 12, 2010, the Property Manager resigned its obligations under the PAMA, effective December 31, 2010. Id. ¶ 54. The TIC owners subsequently declined to renew the PAMA, effectively firing the Property Manager. Id. ¶ 56. Despite being terminated as property manager, Wojnar and Cabot (under the auspices of the Property Manager) continued to collect the Property's rents and other contributions from the TIC owners, which they pocketed rather than use on Property expenses, such as the mortgage. Id. ¶¶ 57-58, 60, 77-78, 109, 139-140.

The TIC owners selected a new property manager, Midgard, to begin managing the property in April 2011. Id. ¶ 63. Mariner H withheld consent to the new property manager. See id. ¶ 64. Wojnar and Cabot interfered with the new management, including by asserting to TIC

owners, tenants and others that Midgard was not the lawful manager. Id. ¶ 63, 68.

Shortly after becoming the property manager, Midgard filed an eviction action against Park Centre for failure to pay rent. Midgard Management, Inc., et al. v. Park Centre Med-Suites, LLC, et al., 114 So.3d 302, 305 (Fla. Dist. Ct. App. 2013), Compl. Exh. 7, ECF #1-1. In that suit, Park Centre alleged that Midgard had no standing to bring this action because it did not have the unanimous consent required by the TIC Agreement to act as property manager. Id.

The bank foreclosed on the Property in September 2014. Compl. ¶ 67. Plaintiff filed this action on August 2, 2016, alleging the following causes of action: fraud, negligent misrepresentation, fraud by inducement, fraudulent concealment, aiding and abetting fraud, tortious interference with mortgage contract, theft and conversion, civil conspiracy, breach of fiduciary duty, aiding and abetting breach of fiduciary duty, and unjust enrichment.

## DISCUSSION

In considering a motion to dismiss made pursuant to Federal Rule of Civil Procedure 12(b)(6), the court must accept all factual allegations in the complaint as true and must also draw all reasonable inferences in favor of the plaintiff. Erickson v. Pardus, 551 U.S. 89, 94 (2007) (per curiam); Lundy v. Catholic Health System of Long Island Inc., 711 F.3d 106, 113 (2nd Cir. 2013). The complaint's allegations, however, "must be enough to raise a right to relief above the speculative level." Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007).

"When determining the sufficiency of plaintiff's claim for Rule 12(b)(6) purposes, consideration is limited to the factual allegations in plaintiffs' [] complaint, which are accepted as true, to documents attached to the complaint as an exhibit or incorporated into it by reference, to matters of which judicial notice may be taken, or to documents either in plaintiffs' possession or of which plaintiffs had knowledge and relied on in bringing suit." Brass v. Am. Film Techs.,

Inc., 987 F.2d 142, 150 (2d Cir. 1993) (citations omitted); see also I. Meyer Pincus & Assocs., P.C. v. Oppenheimer & Co., 936 F.2d 759, 762 (2d Cir. 1991) (holding that district courts may consider documents submitted by a defendant on a motion to dismiss if the documents are explicitly relied upon in and integral to the plaintiff's complaint).

None of the contracts at issue were attached to the complaint. However, all are incorporated by reference and relied upon to substantiate plaintiffs' claims. See Compl. ¶¶ 41-42. Therefore, on these motions, I consider the complaint, the TIC Agreement and the PAMA.

### A. Motion to Dismiss and Compel Arbitration

Defendant Wojnar moved to dismiss this action and compel arbitration. ECF #8. Defendant Miller joined this motion. ECF #13. For the reasons that follow, arbitration is compelled with regard to these two defendants.[2]

There is no dispute that the TIC Agreement included a valid arbitration clause. However, plaintiff argues that "the claims in this case do not depend in any way on the existence or terms of the TIC Agreement and are therefore not subject to its arbitration clause." Pl.'s Mem. of Law Opp'n. to Mot. to Dismiss and Compel Arbitration, ECF #22 ("Pl.'s First Mem."), at 8. Instead, plaintiff contends that its claims arise solely under the PAMA. Id. at 3. In other words, plaintiff argues, "[w]hile plaintiff agreed to arbitrate disputes with the other TICs, plaintiff did not agree to arbitrate unrelated disputes arising out of the rendition of property management services from Wojnar's other companies." Id. at 8. Plaintiff also argues that Wojnar is not entitled to compel

---

[2] The following analysis would also apply to the Cabot Defendants. However, these defendants did not move to compel arbitration, opting instead to move to transfer the claims against them. ECF #10, 12. A court will not enforce an arbitration agreement where both parties have chosen not to compel arbitration. Cf. PPG Industries, Inc. v. Webster Auto Parts, Inc., 128 F.3d 103 (2d Cir. 1997) (explaining circumstances under which a party may waive right to arbitration). Therefore, the Cabot Defendants' motion to transfer is addressed, infra, at § B.

7

arbitration as a non-signatory to the TIC Agreement. Id. at 9-11. (Miller is also a non-signatory to the TIC Agreement.)

"To determine whether a particular dispute falls within the scope of an agreement's arbitration clause . . . a court should [first] classify the particular clause as either broad or narrow." Louis Dreyfus Negoce S.A. v. Blystad Shipping & Trading, Inc., 252 F.3d 218, 224 (2d Cir. 2001). "When parties use expansive language in drafting an arbitration clause, presumably they intend all issues that 'touch matters' within the main agreement to be arbitrated." Id. at 225 (citing Genesco, Inc. v. T. Kakiuchi & Co., Ltd., 815 F.2d 840, 846 (2d. Cir. 1987)). The strong federal policy in favor of arbitration requires courts to "compel arbitration unless it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute." Collins & Aikman Prods. Co. v. Bldg. Sys., Inc., 58 F.3d 16, 19 (2d Cir. 1995); see also Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp., 460 U.S. 1, 24-25 (1983) ("[A]ny doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration.").

"[A]n arbitration clause in one agreement may apply to other, closely related agreements." Jalee Consulting Grp., Inc. v. XenoOne, Inc., 908 F. Supp. 2d 387, 400 (S.D.N.Y. 2012). "[W]here, as here, the question is whether the arbitration clause in one contract should govern a claim alleging breach of a different contract, the Second Circuit consistently has asked whether the claim requires construction of the contract that contains the arbitration clause or otherwise implicates the parties' rights and obligations under that contract." Mirant Americas Energy Marketing LP v. 1st Rochdale Coop. Grp., Ltd., 363 F. Supp. 2d 679, 682 (S.D.N.Y. 2005).

Here, the arbitration clause, which applies to "[a]ny controversy between the parties

hereto arising out of or related to this Agreement or the breach thereof or an investment in the tenant in common interests in the project," TIC Agreement § 10.6,  is plainly broad in scope. See Collins, 58 F.3d at 18 ( "[a]ny . . . controversy arising out of or related to this agreement"); Jalee, 908 F. Supp. 2d at 400 ("[a]ny . . . controversy . . . which may arise . . . out of or in relation to or in connection with this Agreement," emphasis in original).  "[T]he [TIC] Agreement's arbitration clause is sufficiently broad to trigger the presumption of arbitrability for collateral agreements." Jalee, 908 F. Supp. 2d at 400.

Contrary to plaintiff's representations, many of its claims clearly "implicate[] issues of contract construction or the parties' rights and obligations under [the TIC Agreement]." Id.  The PAMA, which plaintiff agrees is at issue in this dispute, Pl.'s First Mem. at 3, references the TIC Agreement at least nine times.  See PAMA ¶¶ 1.2.1; 1.2.2; 2.5.1; 2.5.4; 2.6.2; 2.7; 13.1; 14.1; 14.2.  The TIC Agreement also repeatedly notes its close relationship with the PAMA.  See, e.g., TIC Agreement ¶ 2.1 ("Concurrently with the acquisition of the Project, the Tenants in Common will enter into a Property and Asset Management Agreement (the 'Management Agreement') with Mariner Property Management Services, LLC."); ¶ 10.3 ("This Agreement, together with the Management Agreement, constitutes the entire agreement. . .".); ¶ 10.17 ("The Tenants in Common each agree that Mariner Asset Management, LLC, and its affiliates and assigns shall be third party beneficiaries of this Agreement.").

A core part of the dispute is whether defendants acted wrongly in approving leases without the TIC owner's consent.  See Compl. ¶¶ 90, 98, 104, 114, 118.  The PAMA provision requiring such consent relies on the TIC Agreement to explain the procedure for obtaining it. See PAMA ¶ 2.6.2.  Therefore, in order to determine whether defendants violated the PAMA, a court would have to determine if they followed the procedures in the TIC Agreement.  Plaintiff's

9

allegations also center on whether the Property Manager improperly continued to act as property manager after December 31, 2010.  Compl. ¶¶ 64-65, 68, 149.  This question, too, can only be answered by construing the consent provision in the TIC Agreement.  See PAMA ¶¶ 2.7, 10.1.  See also Midgard, 114 So.3d 302 (analyzing whether new management had standing to pursue eviction by construing TIC Agreement's consent requirements); cf. Snyder v. Wells Fargo Bank, N.A., No. 11-cv-4496, 2011 WL 6382707, at *4 (S.D.N.Y. Dec. 19. 2011) (refusing to extend arbitration clause to cover dispute arising under a second contract where "the parties' rights under each contract can be fully considered on their own without regard to the other contract").

      Plaintiff's brief includes a list of allegations that when "compared with the terms of the PAMA, show that the two are inextricably linked."  Pl.'s First Mem. at 5.  One example given is that "Wojnar and Cabot continued to collect the Property's rents, keep the rents and security deposits for themselves, and not pay the Property's mortgage loan or other expenses."  Id. at 6 (quoting Compl. ¶ 57).  This allegation is compared with the obligation under the PAMA to "deposit all monies [collected as rents] in the Operating Account . . . [and] allocate all income, revenue and expense from the Project to the Tenants in Common."  Id. (quoting PAMA ¶ 2.7).  But plaintiff's brief misleadingly cuts off the rest of the quotation: "The Property Manager shall allocate all income, revenue and expenses from the Project to the Tenants in Common ***as set forth in the Tenants in Common Agreement***."  PAMA ¶ 2.7 (emphasis added).[3]  See also Compl. ¶ 204 ("Wojnar and Cabot owed contractual and fiduciary duties . . . to abide by the TIC Agreement).  Because the two agreements are so closely linked, it is appropriate to extend the

---

[3] "The Court is not bound by [plainitff's] characterizations of its legal claims, but instead must look to the factual allegations underlying those claims to determine whether they fall within the scope of the [arbitration] clause."  Vermont Pure Holdings, Ltd. v. Descartes Sys. Grp., Inc., 140 F. Supp. 2d 331, 335 (D.Vt. 2001) (citing Genesco, 815 F.2d at 846).

arbitration clause from the TIC Agreement to cover this dispute.

The inquiry does not end here, however, because Wojnar and Miller are not signatories to the arbitration agreement they seek to enforce. "Where a non-signatory to an arbitration agreement seeks to enforce it against a signatory, the Court must undertake a careful review of the relationship among the parties, the contracts they signed and the issues that had arisen among them." Jalee, 908 F. Supp. 2d at 400-01 (internal quotations and alterations removed) (citing JLM Indus., Inc. v. Stolt-Nielsen, S.A., 387 F.3d 163, 177 (2d Cir. 2004)). A signatory is estopped from denying that certain issues should be arbitrated when "the issues the nonsignatory is seeking to resolve in arbitration are intertwined with the agreement that the estopped party has signed." JLM, 387 F.3d at 177. [4] The Second Circuit has applied estoppel in cases where "the non-signatory party asserting estoppel has had some sort of corporate relationship to a signatory party . . . [i.e.,] subsidiaries, affiliates, agents, and other related business entities." Ross v. Am. Express Co., 547 F.3d 137, 144 (2d Cir. 2008) (emphasis in original).

As discussed above, the issues Wojnar and Miller seek to arbitrate are "intertwined with" the TIC Agreement. Furthermore, the complaint clearly establishes that the defendants are so closely related as to "justif[y] a conclusion that the party which agreed to arbitrate with another entity should be stopped from denying an obligation to arbitrate a similar dispute with the adversary which is not a party to the arbitration agreement." Sokol Holdings, Inc. v. BMB

---

[4] Plaintiff argues that the court may not enforce the arbitration agreement based on estoppel because Wojnar did not raise it in his motion. Pl.'s Mem. at 8-9. However, courts in this circuit "liberally construe[] pleadings and briefs submitted by pro se litigants, reading such submissions to raise the strongest arguments they suggest." Angulo v. Nassau Cty., 89 F. Supp. 3d 541, 548 (E.D.N.Y. 2015) (quoting Bertin v. United States, 478 F.3d 489, 491 (2d Cir.2007)). Here, Wojnar notes that he is a manager of each of the "Mariner Entities," including Mariner H, a signatory of the TIC Agreement, and the Property Manager, a signatory of the PAMA. Def.'s Mot. to Dismiss and Compel Arbitration, ECF #8, at 3. Raising the interrelatedness of these signatories is sufficient to suggest an estoppel argument.

Munai, Inc., 542 F.3d 354, 359 (2d Cir. 2008).[5] See, e.g., Compl. ¶ 12 ("Wojnar and Cabot operated the Mariner Entities . . . as a single economic enterprise."); ¶ 11 (defining "Mariner Entities" to include Property Manager and Mariner H); ¶ 104 ("Miller [was] Mariner's affiliate"); ¶ 105 ("Park Centre has no existence independent of Miller"); ¶ 107 (defendant Medical Practice Operations, Inc. was owned by Miller); ¶ 113 ("Miller signed the Garden Lease purportedly on behalf of an entity known as Gardens Med-Suites, LLC; that entity did not exist, however, meaning that Miller signed the Gardens Lease in his personal capacity."). Therefore, plaintiff is estopped from claiming the arbitration agreement in the TIC Agreement does not apply. Wojnar and Miller may enforce the arbitration provision.

Where a suit presents "any issue referable to arbitration under an agreement in writing," the court "shall on application of one of the parties stay the trial of the action until such arbitration has been had in accordance with the terms of the agreement." 9 U.S.C. § 3. A stay is mandatory; the court has no discretion. Katz v. Cellco P'ship, 794 F.3d 341, 345 (2d Cir. 2015), cert. denied, 136 S. Ct. 596 (2015). Claims against Wojnar and Miller are severed and stayed pending arbitration.[6] Because I grant Wojnar's motion to compel arbitration, I deny as moot his motion for an extension of time to reply in support of this motion or answer the complaint. See ECF #27.

## B. Motion to Dismiss or Transfer Venue

---

[5] Indeed, plaintiffs do not dispute this point in their brief. Pl.'s First Mem., at 9-10.

[6] The court declines to decide whether any of plaintiff's claims against Wojnar and Miller are not subject to arbitration. That task is properly left to the arbitrator. Dodge Hyundai of Paramus v. United Welfare Fund, Welfare Div., No. 11-cv-979, 2011 WL 4356373, at *7 (E.D.N.Y. Sept. 16, 2011) ("If the [arbitration] clause is 'broad', a court generally should compel arbitration and permit the arbitrator to decide whether the dispute falls within the arbitration clause." (citing Prudential Lines, Inc. v. Exxon Corp., 704 F.2d 59, 64 (2d Cir. 1983))).

Though not seeking to arbitrate, the Cabot Defendants moved to dismiss or transfer the case because venue is improper and forum selection clauses in the TIC Agreement and PAMA require this controversy to be litigated in the Southern District of Florida.  ECF #10; ECF #12.  The Cabot Defendants also request attorneys' fees and costs incurred in bringing this motion under the contracts.  Id.  For the reasons that follow, I conclude that forum selection clauses in the TIC Agreement and the PAMA mandate transfer to the Southern District of Florida.  Because I grant the motion to transfer, I do not reach whether venue is proper in this district.  Finally, I deny the request for attorneys' fees and costs.

### a. The forum selection clauses mandate transfer.

The Second Circuit has provided a four-part inquiry that courts must undertake in determining whether to dismiss a claim based on a forum selection clause:

> The first inquiry is whether the clause was reasonably communicated to the party resisting enforcement. The second step requires [the court] to classify the clause as mandatory or permissive, i.e., to decide whether the parties are required to bring any dispute to the designated forum or simply permitted to do so. Part three asks whether the claims and parties involved in the suit are subject to the forum selection clause.
>
> If the forum clause was communicated to the resisting party, has mandatory force and covers the claims and parties involved in the dispute, it is presumptively enforceable. The fourth, and final, step is to ascertain whether the resisting party has rebutted the presumption of enforceability by making a sufficiently strong showing that "enforcement would be unreasonable or unjust, or that the clause was invalid for such reasons as fraud or overreaching."

Phillips v. Audio Active, Ltd., 494 F.3d 378, 383-84 (2d Cir. 2007) (quoting M/S Bremen v. Zapata Off-Shore Co., 407 U.S. 1, 15 (1972)) (citations omitted); see also Global Seafood Inc. v. Bantry Bay Mussels Ltd., 659 F.3d 221, 224 (2d Cir. 2011).

Applying the four-part test here, it is clear that the forum selection clauses must be enforced.  The forum selection clauses were clearly communicated to plaintiff in the contracts at

issue.[7] Both clauses use "shall", indicating that the provision is mandatory. TIC Agreement ¶ 10.5; PAMA ¶ 13.6. Both are expansive, covering "any action relating to or arising out of" the contracts. Id. As explained above, each of plaintiffs' claims are covered by one or both of the contracts. Finally, plaintiffs have not argued that the clauses are unreasonable, unjust or invalid. As such, the forum selection clause will be enforced.

Plaintiff counters that the forum selection clause cannot be enforced by non-signatories to the agreements. Pl.'s Mem. in Opp'n. to Mot. to Dismiss or Transfer Venue, ECF #24 ("Pl.'s Second Mem.") at 5-6. But "[i]n general, the fact that a party is a non-signatory to an agreement is insufficient, standing alone, to preclude enforcement of a forum selection clause." Magi XXI, Inc. v. Stato della Citta del Vaticano, 714 F.3d 714, 722 (2d Cir. 2013) (citing Aguas Lenders Recovery Grp., LLC v. Suez, S.A., 585 F.3d 696, 701 (2d Cir.2009)). The Second Circuit has held that "a non-signatory to a contract containing a forum selection clause may enforce the forum selection clause against a signatory when the non-signatory is 'closely related' to another signatory." Id. at 723.

Here, non-signatory Cabot Defendants are included in this action *precisely because of* their close relationship to signatory defendants. Compl. ¶ 11 (Cabot is "owner[] and alter ego[]" of Property Manager and Mariner H); see also ¶ 18 (Catherine Cabot is owner of WTK Realty, LLC, "which was itself an alter ego of the Mariner Entities, Wojnar, and Cabot"); ¶ 23 (Kraus "was, on the one hand, an 'investment relations' employee with the Mariner Entities, and on the

---

[7] Plaintiff's opposition to the Motion to Dismiss or Transfer addresses only the forum selection clause in the TIC Agreement. See, Pl.'s Second Mem. at 4-5. However, plaintiff contends that his claims arise under the PAMA, see Pl.'s First Mem. at 3, which also contains a forum selection clause. To the extent any of plaintiff's arguments regarding the enforceability of the forum selection clause in the TIC Agreement are not addressed in this opinion, the court's ruling can rely solely on the forum selection clause in the PAMA.

14

other, nominal owner of WTK [Realty, LLC], along with Wojnar's and Cabot's wives' 'charitable trusts.'") Plaintiff cannot allege that defendants created an overlapping web of companies and relationships in furtherance of their fraud and also maintain that defendants are not "closely related."

Plaintiff correctly notes that the Supreme Court has determined that forum selection clauses may not be enforced through a motion to dismiss under Rule 12(b)(3). Pl.'s Second Mem. at 5 (citing Atl. Mariner Constr. Co. v. U.S. Dist. Ct. for the West. Dist. of Tex., 134 S.Ct. 568, 579 (2013)). Therefore, the motion to dismiss is denied. Instead, the case will be transferred to the Southern District of Florida.

### b. Attorneys' fees are not awarded.

Finally, the Cabot Defendants request attorneys' fees and costs under the contracts. Def.'s Mot. to Dismiss or Transfer, ECF #10, at 10. However, as these defendants have successfully argued, any dispute arising under the contracts must be adjudicated in the Southern District of Florida. Therefore, the request is denied without prejudice to defendants raising this issue in the proper forum.

### CONCLUSION

For foregoing reasons, I GRANT Wojnar and Miller's motion to compel arbitration and STAY proceedings with respect to these defendants pending arbitration, and GRANT the Cabot Defendants' motion to transfer to the Southern District of Florida, and DENY as moot these defendants' motion to dismiss for improper venue.[8] I also DENY without prejudice the Cabot

---

[8] The court recognizes that this order has the effect of creating parallel proceedings: (1) litigation in this district against those defendants who did not move to dismiss (Patricia A. Wojnar, Park Centre Med-Suites, LLC, Gardens Med-Suites, LLC, and Medical Practice Operations, Inc.); (2) arbitration against Wojnar and Miller (with action in this district stayed against these defendants); and (3) litigation in the Southern District of Florida against the Cabot

Defendants' request for attorneys' fees and costs, and DENY as moot Wojnar's motion for extension of time.

SO ORDERED.

_____/s/_____
Allyne R. Ross
United States District Judge

Dated:     October 14, 2016
           Brooklyn, New York

---

Defendants.
      To consolidate defendants, plaintiff may enforce the arbitration clause against all parties by filing motions in this district and the Southern District of Florida. This would result in only one active proceeding, the arbitration, but would leave stayed proceedings in this district and, presumably, the Southern District of Florida. If plaintiff does not elect to enforce the arbitration clause, it may consider moving to dismiss (without prejudice) or transfer claims against the four defendants who did not move to dismiss. There appears to be no advantage to this court retaining jurisdiction over those defendants.